**F I L E D**

**PUBLISH**

**July 7, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TIMOTHY DESHAZER,

Defendant-Appellant.

No. 05-8053

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 00-CR-25-D)**

---

W. Keith Goody, Attorney at Law, Alpine, Wyoming, for Defendant-Appellant.

David A. Kubichek, Assistant United States Attorney, District of Wyoming (Matthew H. Mead, United States Attorney, District of Wyoming, with him on the brief), Casper, Wyoming, for Plaintiff-Appellee.

---

Before **HENRY**, **BALDOCK** and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. INTRODUCTION

Timothy deShazer appeals the partial denial of his Motion to Continue Trial, or in the Alternative, Renewal of Motion to Dismiss - *Jackson v. Indiana* (the "Motion"). Although the district court granted Mr. deShazer's request to continue his trial during the pendency of additional competency evaluations, it denied that part of the Motion seeking outright dismissal of the indictment. On appeal, Mr. deShazer asserts the district court erred in refusing to dismiss the indictment because his pretrial confinement during the pendency of competency proceedings has prejudiced his ability to present an adequate defense to the charges against him. Although Mr. deShazer asserts he raises this claim pursuant to *Jackson v. Indiana*, 406 U.S. 715 (1972), this court concludes his claim is, in reality, a disguised speedy-trial claim. Because this court does not have jurisdiction to review interlocutory orders of the district courts refusing to dismiss indictments on speedy-trial grounds, *United States v. MacDonald*, 435 U.S. 850, 861 (1978), we **dismiss** Mr. deShazer's appeal for lack of appellate jurisdiction.

## II. BACKGROUND

To place this appeal in context, it is necessary to set out the history of Mr. deShazer's pretrial confinement. On January 5, 2000, Mr. deShazer was charged in Wyoming state court with attempted kidnapping, aggravated assault and

battery, and aggravated burglary. A few days later, Mr. deShazer was indicted in federal district court on one count of interstate stalking, in violation of 18 U.S.C. § 2261A, and one count of using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Both the federal and state charges arose out of a stalking incident which culminated when Mr. deShazer broke into the victim's home and attempted to kidnap her.[1]

Proceedings on the federal charges were deferred pending a state-court trial on the state charges. Mr. deShazer was found guilty on the state charges in May 2000. Shortly thereafter, while still in state custody awaiting sentencing, Mr. deShazer was diagnosed with delusional and depressive disorders.[2] The United States moved the federal district court to take Mr. deShazer into federal custody pursuant to a writ of habeas corpus *ad prosequendum* so he could undergo further

---

[1]The facts underlying the charges against Mr. deShazer are not pertinent to the resolution of the purely legal issues raised in this appeal and will not be set out in this opinion. Those facts, however, are set out in detail in the opinion of the Wyoming Supreme Court on direct appeal from the state court convictions. *deShazer v. State*, 74 P.3d 1240, 1243-44 (Wyo. 2003).

[2]On the motion of state-court defense counsel, the state trial court ordered Mr. deShazer evaluated at the Wyoming State Hospital. *See* Wyo. Stat. Ann. § 7-11-303(a), (b). After being diagnosed with delusional and depressive disorders, the state trial court ordered forced medication. In a subsequent report to the state trial court, the Wyoming State Hospital concluded Mr. deShazer's mental illness was "well controlled by his current medication." Nevertheless, the author of the report opined Mr. deShazer was incompetent to assist in his defense at his state trial and lacked the capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law at the time the crimes were committed.

psychiatric evaluation. Wyoming wished to obtain a second opinion on the question of Mr. deShazer's competence and indicated a federal evaluation would be satisfactory. Mr. deShazer had no objection and specifically waived his right to a speedy trial and his rights under the Interstate Compact on Detainers. Accordingly, the district court ordered Mr. deShazer taken into federal custody and subjected to a psychiatric or psychological examination pursuant to the terms of 18 U.S.C. §§ 4241, 4242, and 4247.

Mr. deShazer was evaluated at the Federal Medical Center in Rochester, Minnesota; Federal Medical Center staff agreed with the conclusion of the Wyoming State Hospital that Mr. deShazer was currently competent to stand trial. Mr. deShazer was returned to Wyoming state custody on November 6, 2001, to await sentencing on his state convictions. After his state sentencing proceedings were complete, Mr. deShazer was again taken into federal custody, on June 25, 2002, to resolve the pending federal charges. Since that time, Mr. deShazer has remained in federal custody pending trial on the federal charges.

There is no question the federal proceedings have been repeatedly delayed. Arraignment was originally scheduled for July 8, 2002, but was continued because defense counsel claimed Mr. deShazer was incompetent to proceed and sought an independent mental evaluation to support that assertion. The independent competency evaluation, along with a notice that Mr. deShazer would pursue an

insanity defense at trial, was provided to the district court on September 13, 2002. The independent competency evaluation concluded Mr. deShazer was presently competent to stand trial. The arraignment was rescheduled for October 15, 2002, but was continued due to defense counsel's renewed concerns about Mr. deShazer's competency. The district court then determined it was necessary to conduct a competency hearing.

The district court held a competency hearing on February 24, 2003. Following the hearing, the district court found Mr. deShazer competent to stand trial and reset the arraignment for April 16, 2003. At the arraignment, the district court scheduled a jury trial for June 2, 2003. Shortly thereafter, Mr. deShazer filed a motion to dismiss the federal charges based upon the Double Jeopardy Clause, asserting his state court prosecution was a sham and a cover for a federal prosecution. After further delays at the request of Mr. deShazer, the district court held a hearing on the motion to dismiss on June 24, 2003. The district court subsequently denied the motion to dismiss; Mr. deShazer quickly filed a notice of appeal; and further proceedings in the district court were stayed pending the outcome of the appeal in this court. After the Wyoming Supreme Court overturned Mr. deShazer's state court convictions on direct appeal, Mr. deShazer moved this court to dismiss as moot his appeal from the denial of his Double-

Jeopardy-based motion to dismiss the federal charges. This court granted Mr. deShazer's motion and the matter was reactivated in the district court.

On December 22, 2003, the district court held a status conference and set a trial date of February 17, 2004. Shortly thereafter, the district court entered an order setting another competency hearing for February 13, 2004, four days before the jury trial was set to begin. The very next day, Mr. deShazer asked the district court to allow another competency examination and to continue the competency hearing until February 17, 2004, the date the jury trial was set to begin. At the conclusion of the February 17 competency hearing, the court ordered, in accordance with the positions of both parties, that Mr. deShazer be re-evaluated by the Bureau of Prisons as to his competency to stand trial.

The district court set another competency hearing for July 28, 2004. At the request of both Mr. deShazer and the government, the competency hearing was continued until August 25, 2004, though the district court noted it would not authorize any further delays. Despite the district court's admonition, Mr. deShazer again moved to continue the competency hearing and, furthermore, requested the appointment of experts to perform competency evaluations on behalf of the defense. After a hearing on the matter, the district court granted Mr. deShazer's requests. While those evaluations were underway, and before a new date had been set for a competency hearing, the district court set a trial date of

January 4, 2005; the district court also set an alternate trial date of April 18, 2005, in case the first date was taken up by a different criminal matter.

Approximately two weeks before the January 4, 2005 trial date, Mr. deShazer filed an omnibus motion asking the district court to continue the trial until April 18, 2005, schedule a competency hearing, and dismiss the charges against him for violation of his rights under *Jackson v. Indiana*, 406 U.S. 715 (1972). After a hearing on the matter, the district court entered an order denying the request to dismiss the indictment outright, but granting the request to continue the trial during the pendency of further competency proceedings.

The district court interpreted Mr. deShazer's motion to dismiss as raising two distinct claims: (1) a claim under *Jackson* that he has been held more than a reasonable time necessary to determine whether there was a substantial chance he would attain competency to stand trial in the foreseeable future; and (2) a Sixth Amendment speedy-trial claim challenging his lengthy pretrial confinement. In rejecting Mr. deShazer's *Jackson*-based ground for dismissal of the indictment, the district court ruled as follows:

> The Defendant's right under *Jackson* to be held no more than a reasonable amount of time necessary to determine whether he is competent to stand trial has not been violated. The Court in *Jackson* declined to prescribe arbitrary time limits. [406 U.S at 738] Therefore, whether a pretrial detention is reasonable is left to the judgment of the trial court. In this case, no doctor has stated that the Defendant will never be competent to stand trial. To the contrary, there has always been hope that with proper treatment he would

become competent. Take for example, Dr. Kahn's latest letter which opines that there is at least a possibility that the Defendant will become competent after treatment with Geodon. In fact, the Defendant was found to be competent by this Court in March of 2003. Furthermore, much of the delay in this case was caused by the parallel state court proceedings as well as the Defendant's appeal to the Tenth Circuit. Those periods in which the proceedings were delayed for the purpose of determining the Defendant's competence were justified, and were always permitted with the hope that evaluation and treatment would render the defendant competent to stand trial. The Defendant has been held only the amount of time reasonably necessary to determine whether he is competent, and no longer, and the Defendant's rights under *Jackson* have not been violated.

The district court likewise rejected Mr. deShazer's Sixth-Amendment-based ground for dismissal. It concluded that although the length of the delay weighed against the government, the reasons for the delay, Mr. deShazer's failure to assert his right to a speedy trial, and the lack of prejudice flowing from the delay all weighed in the government's favor. *See generally United States v. Tranakos*, 911 F.2d 1422, 1427 (10th Cir. 1990) ("A Sixth Amendment speedy trial claim is assessed by balancing the length of the delay, the reason for the delay, whether the defendant asserted his right to a speedy trial, and whether the delay prejudiced the defendant.").

Although the district court denied Mr. deShazer's motion to dismiss outright the indictment against him, it reluctantly granted that portion of the Motion seeking a further continuance of the proceedings in the case. The district court concluded further evaluation was appropriate, reasoning as follows:

The Court finds pursuant to 18 U.S.C. § 4241(a) and § 4242(a) that reasonable cause exists to believe the Defendant may presently be suffering from a physical or mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or assist properly in his defense, and further, that questions have arisen regarding defendant's physical and mental competence at the time of the commission of the charged offense.

The Court is aware that a psychological and competency evaluation has already been performed at a Bureau of Prisons medical facility in 2001, in which the Defendant was found to be competent. Since the original evaluation, the Defendant has been repeatedly evaluated by psychiatrists and psychologists outside the federal system, all of whom have concluded that the Defendant's mental capacity is impaired by a delusional disorder. Defense counsel points out that the anomalous federal evaluation was deficient in part because it was prepared by a clinical psychologist who was merely an intern at the time, not a psychiatrist as the Court had directed. Defense counsel argues that the Defendant was never appropriately treated due to the original deficient evaluation and that only in the past few months, while under the care of Drs. Nash and Kahn at the Wyoming State Hospital, has he been appropriately treated.

Though the Court is exceedingly reluctant to allow additional delay while yet another evaluation is completed, given the tortured history in this case, the Court finds it prudent to order an evaluation from which it may determine whether this Defendant will ever be capable of standing trial. At this point, there is some hope that the Defendant can regain competence and the Court will endure this one further delay to assess this possibility. The Court hopes that the medical director of the Bureau of Prisons facility to which the Defendant is assigned will recognize that the history of the Defendant's case requires the matter to be expedited with some urgency. The Court is extremely cognizant of the five-year delay in bringing this case to trial and stresses its determination that there can be no further delays in determining whether the Defendant is competent, or likely to become competent in the foreseeable future. The Court requests that the Defendant's evaluation be given the highest priority.

### III. DISCUSSION

On appeal, Mr. deShazer asserts the district court erred in refusing to dismiss the indictment against him. He summarizes his argument as follows:

> The defendant has been in custody for almost six years, and the federal prosecution is still pending. All of the delay has been caused by competency issues and procedural decisions made by the United States. It would be unreasonable to permit the prosecution to continue given the inordinate delay and prejudice to the defendant.

Appellant's Br. at 16. For its part, the government asserts that although Mr. deShazer relies on *Jackson v. Indiana*, 406 U.S. 715 (1972), in support of his claimed entitlement to dismissal of the indictment, his claims are really disguised interlocutory Sixth Amendment speedy-trial claims over which this court lacks jurisdiction. *See MacDonald*, 435 U.S. at 861. To resolve the jurisdictional question raised by the government, it is necessary to set out at some length the decisions in *Jackson* and *MacDonald*.

Theon Jackson was "a mentally defective deaf mute with a mental level of a pre-school child." *Jackson*, 406 U.S. at 717. He was charged, in Indiana state court, with two counts of robbery. *Id.* Upon entry of a not guilty plea, the state court set in motion Indiana's procedures for determining Jackson's competency to stand trial. *Id.* At a competency hearing, two court-appointed psychiatrists presented uncontradicted evidence that "Jackson's almost non-existent communication skill, together with his lack of hearing and his mental deficiency,

-10-

left him unable to understand the nature of the charges against him or to participate in his defense." *Id.* at 718. Both doctors opined that it was wholly unlikely Jackson would ever acquire the communication skills necessary to proceed to trial. *Id.* at 718-19. Based on that evidence, the state court concluded Jackson was incompetent to stand trial and "ordered him committed to the Indiana Department of Mental Health until such time as that Department should certify to the court" Jackson was competent. *Id.* at 719. Jackson appealed the ruling in state court, contending commitment under those circumstances amounted to a life sentence without ever being convicted of a crime, in deprivation of the Fourteenth Amendment rights to due process and equal protection. *Id.* After the state court denied relief on direct appeal, the Supreme Court took the matter up on a writ of certiorari. *Id.*

The Supreme Court concluded Jackson's commitment under the circumstances amounted to a violation of the Fourteenth Amendment's Equal Protection Clause. *Id.* at 723-30. The Court began by noting the chances Jackson would ever meet the competency standards of the relevant Indiana statute were "at best minimal, if not nonexistent." *Id.* at 727. Accordingly, as a matter of state law, Jackson's commitment was "permanent in practical effect." *Id.* In stark contrast to "incompetent" criminal defendants who were committed until adjudged "sane," persons subject to civil commitment in Indiana fared much

better because the standards for commitment were significantly more rigorous and the standards governing release were far less exacting. *Id.* at 727-29. The Supreme Court held that "subjecting Jackson to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses . . . deprived [him] of equal protection of the laws under the Fourteenth Amendment." *Id.* at 730.

The Supreme Court also determined the proceedings, which resulted in Jackson's indefinite commitment unaccompanied by the substantive and procedural protections afforded persons subject to Indiana's civil commitment laws, violated due process. *Id.* at 731-38. The Court noted both the federal and most state statutory schemes governing pretrial commitment of the mentally incompetent required, as a basis for commitment, dangerousness to self; dangerousness to others; and/or the need for custodial care, compulsory treatment, or training. *Id.* at 731-32, 736-37. Jackson's commitment, on the other hand, rested exclusively on the mere fact he was presently incompetent to proceed to

trial.  *Id.* at 731, 737-38.[3]  In concluding this amounted to a violation of the Due

Proceess Clause, the Court held:

> [A] person charged by a State with a criminal offense who is
> committed solely on account of his incapacity to proceed to trial
> cannot be held more than the reasonable period of time necessary to
> determine whether there is a substantial probability that he will attain
> that capacity in the foreseeable future.  If it is determined that this is
> not the case, then the State must either institute the customary civil
> commitment proceeding that would be required to commit
> indefinitely any other citizen, or release the defendant.  Furthermore,
> even if it is determined that the defendant probably soon will be able
> to stand trial, his continued commitment must be justified by
> progress toward that goal.

*Id.* at 738 (footnote omitted).[4]

---

[3]In this vein, the court noted
Jackson was not afforded any formal commitment proceedings
addressed to his ability to function in society, or to society's interest
in his restraint, or to the State's ability to aid him in attaining
competency through custodial care or compulsory treatment, the
ostensible purpose of the commitment.  At the least, due process
requires that the nature and duration of commitment bear some
reasonable relation to the purpose for which the individual is
committed.
*Jackson v. Indiana*, 406 U.S. 715, 738 (1972) (quotation, footnote, and alteration
omitted).

[4]The federal statutory scheme governing Mr. deShazer's pretrial detention
during the pendency of competency proceedings is radically different from the
Indiana state scheme at issue in *Jackson*.  In fact, the federal scheme was
designed to satisfy the concerns set out by the Court in *Jackson*.  *United States v.
Filippi*, 211 F.3d 649, 652 (1st Cir. 2000).  This court has described the federal
statutory scheme as mandating a three-step process for determining the
competency of a defendant to stand trial.  *United States v. Deters*, 143 F.3d 577,
579 (10th Cir. 1998); *see also* 18 U.S.C. § 4241.
    At the first step, the court must decide whether there is
"reasonable cause to believe that the defendant may presently be

Having determined Jackson's indefinite commitment amounted to a violation of both equal protection and due process, the Court turned its attention to Jackson's claim that the charges against him must be dismissed. *Id.* at 739-41. Although it labeled Jackson's claim "substantial," the Court concluded the claim was "not sufficiently ripe for ultimate decision." *Id.* at 739. In a passage particularly relevant to the case at hand, the Court noted

suffering from a mental disease or defect rendering him mentally incompetent . . . ." Whenever a court has reasonable cause to question the defendant's competency, it may order a psychiatric or psychological examination of the defendant. The district court also has the discretion to confine a defendant during the examination period. The statute states that "[f]or the purposes of an examination pursuant to an order under section 4241, . . . the court *may* commit the person to be examined for a reasonable period, but not to exceed thirty days." The director of the facility may obtain an extension lasting no longer than fifteen days upon a showing of good cause.

At step two, the court conducts a hearing and uses the psychological reports from the step-one examination to determine whether the defendant is able to understand the nature and consequences of the proceedings against her. If not, the defendant is incompetent to stand trial, and the court must order the defendant hospitalized for a reasonable period of time (up to four months) for the purpose of determining whether there is a "substantial probability" that the defendant will become competent in the foreseeable future. If the court finds that this substantial probability exists, the defendant's "step-two" confinement may be extended for an "additional reasonable period of time" to allow him to gain the capacity for trial.

The third step occurs at the end of the second confinement period. At this stage, the court determines whether the defendant has become competent to stand trial or, alternatively, is a long-term incompetent requiring indefinite hospitalization.

*Deters*, 143 F.3d at 579-80 (citations omitted).

> [d]ismissal of charges against an incompetent accused has usually been thought to be justified on grounds not squarely presented here: particularly, the Sixth-Fourteenth Amendment right to a speedy trial, or the denial of due process inherent in holding pending criminal charges indefinitely over the head of one who will never have a chance to prove his innocence.

*Id.* at 740 (footnote omitted). The Supreme Court declined to consider the issue in the first instance, however, because it was neither presented to, nor ruled upon by, the Indiana state courts. *Id.*

Almost six years after the decision in *Jackson*, however, the Supreme Court made clear that "an order denying a motion to dismiss an indictment on speedy trial grounds" is not immediately appealable. *MacDonald*, 435 U.S. at 857. In so ruling, the Court stated "a denial of a motion to dismiss on speedy trial grounds does not represent a complete, formal and, in the trial court, a final rejection of the defendant's claim." *Id.* at 858 (quotation omitted). Instead, the resolution of a speedy trial claim requires "a careful assessment of the particular facts of the case," which is only possible after full development of the facts at trial. *Id.* In addition, the right to a speedy trial is different from the other rights set out in the Constitution because there is a countervailing societal interest in speedy trials that is independent from, and occasionally in opposition to, the interests of the defendant. *Id.* at 862. "Among other things, delay may prejudice the prosecution's ability to prove its case, increase the cost to society of maintaining

those defendants subject to pretrial detention, and prolong the period during which defendants released on bail may commit other crimes." *Id.*

Although there is no discussion of jurisdiction in *Jackson*, this court's precedents indicate an interlocutory appeal in the context of pretrial commitment for competency proceedings is permitted because the "disputed question," i.e., the defendant's liberty interest in not being confined during an evaluation, is wholly separate from the merits of the criminal case. *Deters*, 143 F.3d at 581 (concluding interlocutory appeal permitted at step one of federal competency scheme); *United States v. Boigegrain*, 122 F.3d 1345, 1349 (10th Cir. 1997) (en banc) (concluding interlocutory appeal permitted at step two of federal competency scheme). That interest cannot be fully vindicated in an appeal from a final judgment. *Deters*, 143 F.3d at 581-82; *Boigegrain*, 122 F.3d at 1349. Mr. deShazer's appeal, however, presents no such issue. Instead, Mr. deShazer asks this court to determine whether, by virtue of the delays in bringing this case to a conclusion, the entire case must be dismissed. The distinction between these questions is critically significant in resolving this court's jurisdiction over Mr. deShazer's appeal.

A close review of Mr. deShazer's brief on appeal demonstrates the equal protection and due process concerns at the heart of the Supreme Court's decision in *Jackson* do not relate to the issue Mr. deShazer seeks to raise on appeal. *See*

*Deters*, 143 F.3d at 580-81 (noting that jurisdictional issues, like those present in this case, can only be resolved by examining an appellant's brief to "identify[] the precise issue being appealed").  Although Mr. deShazer mentions equal protection and due process in passing in his brief, he at no point attempts to connect those particular concepts with the record in this case or with his personal situation.

Unlike in *Jackson*, Mr. deShazer is not challenging either the legality or the terms and conditions of the district court's order committing him for further evaluation.  Instead, the challenge set out in his brief is narrowly limited to that part of the district court's order denying his request to dismiss the indictment outright on grounds of "unconstitutional delay."  Although *Jackson* is surely relevant to the former issues, it is not at all relevant to the latter.  *Jackson*, 406 U.S. at 739-40 (refusing to require dismissal of charges because the issue was not ripe).

A motion to dismiss based on what Mr. deShazer has characterized as unconstitutional delay does not raise the equal protection or due process issues before the court in *Jackson*.  Rather, issues of delay "as such" invoke the Sixth Amendment's guarantee of a speedy trial.  *Id.* at 740.[5]  Motions to dismiss based

_____

[5]To be precise, *Jackson* identified a potential due process issue in this context as well, but described it only in terms of the fundamental unfairness of indefinitely holding criminal charges over the head of an accused who, by virtue of his incapacity, will never have an opportunity to prove his innocence. *Jackson*, 406 U.S. at 740. Because Mr. deShazer has never been found incompetent to

on speedy-trial concerns are jurisdictionally distinct from challenges to a district court's order to detain a defendant during the pendency of competency proceedings. *Compare MacDonald*, 435 U.S. at 861 (holding that application of *Cohen* principles "to speedy trial claims compels the conclusion that such claims are not appealable before trial"), *with Deters*, 143 F.3d at 580-82 (holding application of *Cohen* principles demonstrates that an order committing a person for psychiatric or psychological examination under §§ 4241(b) and 4247(b) is immediately appealable). Motions grounded on speedy-trial claims involve factually intensive inquiries into the length of the delay, the reasons for the delay and, most especially, the prejudice to the defendant occasioned by the delay. *MacDonald*, 435 U.S. at 858-859. These questions cannot be confidently resolved pretrial because they are dependent on, and intertwined with, developments occurring at trial. *Id.* In addition, matters involving the Speedy Trial Clause are not so clearly independent of the central question ultimately to be answered in a criminal trial as to warrant pretrial appellate review.[6] *Id.* at 859. Furthermore,

stand trial, much less determined to be unlikely ever to be restored to competence, the due process concern identified in *Jackson* is simply not applicable in the present posture of this case.

[6]As *United States v. MacDonald* explained:
The [speedy-trial] claim would be largely satisfied by an acquittal resulting from the prosecution's failure to carry its burden of proof. . . . [A] central interest served by the Speedy Trial Clause is the protection of the factfinding process at trial. The essence of a defendant's Sixth Amendment claim in the usual case is that the

interlocutory appeals involving speedy-trial claims do not involve a right that, if not vindicated immediately, would necessarily be lost if review had to await final judgment. *Id.* at 860-61.

As is evident from the arguments Mr. deShazer makes in his brief on appeal, the extent of his claim is simply that it has taken too long to sort out the competency questions he has repeatedly raised from the time he was first indicted in federal court and that, solely by virtue of those delays, he is entitled to a dismissal of the indictment. He does not challenge in any way, meaningful or otherwise, that part of the district court's order committing him to the custody of the Bureau of Prisons for further evaluation pursuant to §§ 4241(b) and 4247. In fact, the alternative prayer set out in his motion to dismiss, a further continuance based on renewed claims of incompetency, invited just such an order. Nor does Mr. deShazer challenge any of the terms and conditions of the confinement order, or the fact that his liberty will be compromised in some respects through its implementation. Had he focused on such issues in this appeal, there is no doubt

passage of time has frustrated his ability to establish his innocence of the crime charged. Normally, it is only after trial that that claim may fairly be assessed.

435 U.S. 850, 859-60 (1978).

such a challenge would be within this court's jurisdiction. *Deters*, 143 F.3d at 579-582.[7]

Finally, Mr. deShazer's claims on appeal, and the context in which he makes them, bear no resemblance to the facts and the issues before the Court in *Jackson*. The order at issue in *Jackson* has no genuine analogue in the federal system. *Deters*, 143 F.3d at 579-80 (describing, at length, the three-step process set out in federal statutory law concerning the determination and ultimate disposition of incompetency claims). As noted by the First Circuit, the structure of the present federal provisions respecting competency and insanity issues, 18 U.S.C. §§ 4241-4247, were built around satisfying the Court's concerns in *Jackson*. *United States v. Filippi*, 211 F.3d 649, 652 (1st. Cir. 2000). That explains why Mr. deShazer has not focused on appeal on the manner in which the district court exercised its authority to conduct competency proceedings pursuant to the relevant federal statutes. He has, instead, asserted as his sole claim on

---

[7]Mr. deShazer seems to assert that this court should conclude, in the first instance, that he is not competent to stand trial. Notwithstanding those assertions, however, the district court thus far has entered only one definitive order on the question, finding on March 24, 2003, that Mr. deShazer was competent. While Mr. deShazer has been committed under § 4241(b) for further evaluation of his competency two more times, each of those additional evaluations was prompted by renewed claims of incompetency on the part of Mr. deShazer. The district court, in an abundance of caution, acceded to Mr. deShazer's concerns and postponed the proceedings in this case to receive additional evidence before making a final determination on the issue.

appeal that regardless of who is at fault for the delays in bringing this case to trial, there have now simply been so many such delays that the indictment against him must be dismissed outright. For the reasons set out above, that particular claim has no relationship to the concerns at issue in *Jackson* but, instead, raises speedy trial concerns. A speedy-trial claim is not, however, subject to an interlocutory appeal. *MacDonald*, 435 U.S. at 861.

## IV. CONCLUSION

Mr. deShazer's appeal is hereby **DISMISSED** for lack of appellate jurisdiction.